## BARTLETT et al. v. LIBERTY GLASS CO.

No 16942—Opinion Filed Nov. 16, 1926.

Rehearing Denied March 8, 1927.

1. **Payment—Mistake of Fact—Negligence of Legal Duty as Barring Recovery.**

Mistake of fact for which money voluntarily paid may be recovered must not have been caused by the neglect of a legal duty on the part of the one making the mistake.

2. **Same—Gas—Contract for Furnishing Natural Gas at Rate Contingent on Prevailing Price—Legal Duty of Purchaser to Ascertain Prevailing Price.**

Where by written contract the price to be paid for natural gas delivered at Sapulpa for a term of years was made contingent upon the prevailing price in the Sapulpa field at the beginning of the period, it was the legal duty of the purchaser to know, or ascertain, the prevailing price in the Sapulpa field at that time.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Creek County; John L. Norman, Judge.

Action by Liberty Glass Company against H. U. Bartlett et al. Judgment for plaintiff, and defendants appeal. Reversed.

Lydick, McPherren & Wilson and Lytle & Field, for plaintiffs in error.

W. D. Humphrey, Humphrey & Campbell, and Hughes. Foster & Ellinghausen, for defendant in error.

Opinion by RAY, C. The Liberty Glass Company, a corporation, recovered judgment against H. U. Bartlett and others for the principal sum of $13,444.77, and interest, claimed to have been paid by it to the defendants under a mistake of fact.

September 10, 1918, H. U. Bartlett, who was a producer of natural gas in the Sapulpa field, entered into a written contract with the Liberty Glass Company to furnish gas to its plant in Sapulpa for a period of two years at 12 cents per thousand cubic feet with an option of renewal for another period of three years. upon certain conditions expressed in the contract. The contract was carried out for the two-year period, and gas was furnished and paid for a greater part of the three-year period, when the glass company claims to have discovered that by mistake of fact it had been paying, during the extension period, 4 cents per thousand cubic feet in excess of the contract price.

The option clause reads:

"It is mutually agreed between the parties hereto that the term of this contract shall be for two years from the date hereof, and it is further mutually agreed that this contract may be extended for an additional term of three years, and upon the same terms and conditions; provided, that the prevailing price for gas in the Sapulpa field does not exceed eight cents per thousand cubic feet, in which event, the price to be paid for such gas by the party of the second part shall be increased in the same proportion as the prevailing price for gas in the Sapulpa field shall be increased."

The glass company elected to exercise its option, and so notified Mr. Bartlett by letter. The parties then agreed upon a price of 18 cents per thousand cubic feet at the glass company's plant. That price was paid for more than two years, when the general manager of the glass company, according to his testimony. learned, for the first time, that the prevailing market price at the well in the Sapulpa field at the beginning of the renewal period was 10 cents per thousand cubic feet instead of 14 cents as represented by Mr. Bartlett at the time the price to be paid for the extension period was agreed upon; and upon which representation he relied in making the price agreement and in making payments thereafter.

The parties are agreed that the price to be paid during the extension period was to be determined by the prevailing market price at the well at the beginning of that period, September 10, 1920. There is no controversy as to the advance in the market price in the field. The evidence shows that it was 6 cents when the original contract was made, September 10, 1918, and 10 cents at the beginning of the renewal period, September 10, 1920. The principal controversy arises over the interpretation of the option clause in the original contract. The glass company interprets the option clause to mean that it was to pay the market price at the well plus the transportation charge of 4 cents per thousand cubic feet. The defendants say that, as the market price at the well had increased from 6 cents, at the time the contract was made, to 10 cents at the beginning of the renewal period. the selling price advanced in the same proportion, and by a simple computation reach the conclusion that the selling price would have been 20 cents per thousand cubic feet if the parties had not agreed upon a different price when the contract was renewed.

We think it is not necessary to decide that question. The evidence shows that when the bills for the first month of the renewal

period were presented a controversy arose as to the price to be paid. At a conference between Mr. Bartlett and Mr. Collins, manager for the glass company, the price to be paid was agreed upon. the gas was delivered and paid for at the agreed price of 18 cents per thousand cubic feet. There is no dispute as to that. Mr. Collins says that tne agreement was made upon Mr. Bartlett's representation that the prevailing price in the field was 14 cents and that he relied upon that representation in paying the monthly bills for more than two years; that in January, 1923, when Mr. Bartlett sought to increase the price, he, Collins, called for the glass company's duplicate copy of the original contract and found a letter from Mr. Bartlett of date November 18, 1920, attached to it, from which he first learned that 'the prevailing market price at the well at the beginning of the renewal period was 10 cents; that he immediately demanded the return of the excess paid above 14 cents, and on refusal commenced this suit. The letter referred to reads:

"H. U. Bartlett.
"Oil Properties, Leases and Production.
"Rooms 101-107 Rambo Bldg.. Box 216.

"November 18th, 1920.
"Liberty Glass Co..
"Sapulpa, Oklahoma.
"Gentlemen:

"You are hereby advised that by having exercised your option provided in a certain gas contract entered into between the Liberty Glass Company, and myself on the 10th day of September, 1918, I hereby extend said contract for the additional term of three years, upon the same terms and conditions as therein provided, except that the price for said gas will be 18 cents per thousand feet, this price based on the present market price of 10 cents per thousand cubic feet at the wells.

"If the market price should advance the price to you will advance in the same proportion.

"If the price should be reduced. then the price to you will be reduced in the same proportion.

"With this exception, said contract is to remain in full force and effect under the terms and conditions therein provided for a period of three years from the 10th day of September, 1920.

"Yours respectfully,
"H. U. Bartlett."

Mr. Collins' testimony was that he had never seen the letter until January, 1923, but admitted that it must have been received in due course and had been attached to the glass company's duplicate copy of the contract at all times. He says that the bookkeeping department knew that 18 cents had been agreed upon prior to the receipt of the letter and, probably, for that reason, failed to call his attention to it. The inference to be drawn from his testimony is that if his attention had been called to the letter, the excess above 14 cents would not have been paid.

We think the corporation had knowledge, from the time the letter was received, that Bartlett contended that the agreed price of 18 cents was based upon the market value of 10 cents at the well, although the attention of its manager was not called to the receipt of the letter. But, aside from that, we think it is not made to appear that tne payments were made under a mistake of fact within the legal meaning of that term. Mistake of fact is defined by section 5001, C. S. 1921, as follows:

"Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

"First. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

"Second. Belief in the present existence of a thing material to the contract, which does not exist. or in the past existence of such a thing, which has not existed."

In order to entitle one to recover money voluntarily paid, on the ground that it was paid under a mistake of fact, the mistake must not have been caused by his neglect of a legal duty. In this case the price to be paid for the renewal period was contingent upon the prevailing price of gas in the Sapulpa field September 10, 1920. The contract was renewed at the glass company's option. The only fact necessary to be ascertained. in order to know the price to be paid for the renewal period, was the prevailing price of gas in the Sapulpa field at the beginning of that period. It was recognized by the parties when the contract was made that there was a prevailing price for gas in the Sapulpa field. The evidence shows that other companies were buying gas in that field and that it had a recognized market value at the well. There was nothing in the contract that obligated Bartlett to inform the glass company of the market value. It was the glass company's legal duty to know, or ascertain, the market value at the time of exercising its opinion, or, at least, before agreeing upon a different price and

voluntarily paying the agreed price. This view of the law is sustained by the case of Louisiana Realty Co. v. City of McAlester, 25 Okla. 726, 108 Pac. 391.

The judgment is reversed for further proceedings consistent with this opinion.

By the Court: It is so ordered.